RICHARDS, Chief Baron.
This is certainly a case of very singular circumstances. (Stating the transaction and the connection between the parties, and observing particularly on the communication between James and Maunde, before the bills were produced.) It is said that this transaction was usurious ; and if it were, we are bound here to decide according to law.
Now I confess, on re-consideration, that I think this was an usurious transaction, and that the usury affects the Crown, in the same manner as it would the assignees of Austen & Maunde, if they had become bankrupt. Without entering into all the circumstances, the simple fact is. that Lord Moira and Major James were, as to this transaction, one and the same person. If Cord Moira had gone to Austen & Maunde, and said, “Lend me 34001. and I will give you bills for 40001.” no doubt that would have invalidated the bills ; and I do not see how we can distinguish between the facts of the bills being signed before or after the negotiation, or whether they were taken to Austen & Maunde in an issuable state or not. Major James does not affect to be more than a mere messenger in the business. It was argued, that if the bills were good in their ’^inception, subsequent usury would not make them bad. I think, however, that it would. Then it was contended, that in the hands of the Crown, as of an innocent holder, the vice of the bills was removed ; but, I think that the Crown must stand in the place of an assignee ; and I think it is clear, that in case of bankruptcy an assignee could not have recovered on the bills ; and I see no difference, for they both become possessed by act of law.
It has been put also, that the question was fairly left to the jury as a question of fact, whether this negotiation was a loan or a sale; they being told that in the one case the bills would be bad ; in the other, they would be good. The effect of that direction would be, to leave the question of law to them. Now I think that the person who tried this case ought to have told the jury, that under the circumstances of this case the transaction was usurious. It did not occur to me then, as it does now, that this negotiation was tainted with usury ; but, I should certainly now direct, if theca.se were trying before me, that Lord Moira could not be sued on these bills, because they are bad in point of law ; and, therefore, I think there should be a new trial.
GRAHAM, Baron.
The arguments of the defendant’s counsel have relieved me from many considerable difficulties ; and I think the question was, ultimately, not one of fact. If Major James had received these bills from Lord Moira on his own account, as security for a debt, and had then sold them, the direction would have been right; but James was Lord Moria’s confidential agent. (Adverts to the evidence.) This, therefore, being clearly a loan to Lord Moira, and not a purchase in the market, it was not a question for the jury ; and the Judge should have told them, that it was a transaction which the law did not allow. Then the bills getting into the hands of the Crown, under this extent against its debtor, does not remove the usurious quality ; for, that is ^certainly a very different thing from a bill originally good having got into the possession of a bona fide holder for a valuable consideration.
WOOD, Baron, absent.
GARROW, Baron.
The confusion which has got into this case, proceeds from its having been at one time considered, that these bills were sent about the town to be sold for what could be got for them ; but the fact is, that this paper was sent by the maker to those who well knew its precise value, to get that value for it, which was done. Nothing had been given by Major James for it; and whether the transaction was originally good, it is not necessary to enquire : but that this transaction, as between Major James, the acknowledged agent of Lord Moira, and Austen & Maunde, was usurious, there can be no doubt.
It was ingeniously argued, that the bills, by-getting into the hands of the Crown, made a difference, as between the Crown and the party; but, it would be most unfortunate if that were so ; for, then the grossest usurer would have nothing to do but to get his bills seized under an extent, and then all his illegal transactions would be rendered available in the hands of the Crown. That is too monstrous a proposition for serious consideration, and would require to be supported by undoubted authority.
PER CURIAM.
Rule absolute.